*55 The opinion of the Court was delivered bj
Withers J.
White and Mosely married sisters. In 1849 Mosely was hampered by judgments and executions, and was in fact insolvent. White, being affluent, advanced money which Mosely was to use in buying and selling negroes and to return to White the principal and the nett profits, who stipulated that he would settle one-half of those profits upon the wife of Mosely (whose trustee the plaintiff here is) in such manner as to exclude it from the reach of Mosely’s creditors. Mosely, in pm*suing his traffic upon the money so advanced, purchased in Richmond, in February 1850, Milly and her children, (the subjects of this action of trover), and had them in possession in March 1850, when White died. Mosely accounted with Mrs. White, administratrix and sole heir of her husband, in the forepart of June 1850, for principal and nett profits, in pursuance of the agreements with White in his lifetime, and some days after-wards (not exceeding 16 from the date of the last receipt given by Mrs. White,) she conveyd Milly and her children, as well as other effects, to the plaintiff, as trustee of her sister, Mrs. Mosely, the same being intended to represent one-half the nett profits of Mosely’s traffic, which White had agreed to settle on Mrs. Mosely. The negroes had continued in the possession, or custody, of Mosely from the time he bought them until they were so conveyed. Under executions against Mosely before referred to,, the sheriff seized and sold Milly and her children to Cobb, the defendant here, who defends upon the ground, that he is clothed with the rights of Mosely’s creditors on judgments and executions — and that as to them the negroes were Mosely’s, inasmuch as the agreement between him and White worked a fraud upon them by smuggling the fruits of his skill and labor into a form that should benefit his family and indirectly himself, whereas his creditors were and are entitled to such fruits. It is further urged for Cobb that, the legal right to the negroes vested in Mosely and became subject to their executions, because of his possession for a space *56 of time (from sixteen to twenty-one days) between tbe settlement with Mrs. White, and her conveyance to tbe plaintiff, as trustee.
It is under circumstances, thus briefly stated, that tbe point of the case arises, the jury having found a verdict for the plaintiff under instruction, that the lien of the creditors’ executions did not attach upon the negroes, and that the transaction between White and Mosely, executed as it was, worked no fraud upon creditors.
All must agree that if Mosely had been so unmindful of the duties of life as to work not at all, or for half price, or for nothing, his creditors could not have pricked him up, with their executions. That he should have left his family to starve would have brought neither consolation nor profit to them. What stimulated his exertions — what produced the fruits that make the subject of this litigation ? The answer is, that a beneyolence of White; a stranger to Mosely’s creditors, towards Mrs. Mosely, his sister-in-law, set in motion the debtor’s industry ; and the use of White’s capital, Mrs. Mosely being the meritorious cause and object, produced the fruits now in contest. These have been created by a cause, and a means over which the creditors had no control, and from whose liens they were wholly free, and when they were in posse merely were devoted, by agreement, to an object most worthy in the eye of all sound morality. It is very true, on the other hand, that this debtor-could not have set apart the fruits of his labor, after they had been earned, in trust for his wife and children. But if he had agreed to sell his labor to White, on terms the most improvident, as for his mere maintenance or for less, how could his creditors have rectified that? If he had’made a more reasonable and thrifty contract with White, as, for example, that he would labour for him, on condition that he would maintain his wife and children, and articles consumed in the use were accordingly applied, what fraud would there be, in such case, upon creditors — what scope would have been found *57 for tbeir executions — wbat would they have lost to which they could show any title ? If White, by the promptings of a benevolent sympathy, should have agreed to add something more enduring, in the hands of a trustee, for the use of the wife, no infringement of a creditor’s right can be detected in that.
Although it is conceivable, that, under stipulations such as characterize this case, an insolvent debtor might be enabled to engage his labor and skill upon means, trusted to him by a benevolent friend of his wife, upon previous stipulations so liberal as to endow her trustee with a sum large enough to make the transaction seem a mockery in the eye of a creditor, and although we admit that, in an adventure so fortunate, his just expectations would be sadly disappointed, yet the question would still be as to the range of his execution, not his expectations; and, on the other hand, we see that the principle of this appeal would make it a fraud, if, in pursuance of a debt- or’s stipulation in the morning, the proceeds of a day’s work by him should be applied, in the evening, in the shape of bread towards the maintenance of his family. Neither difference in sums, nor in time, fortunate or unfortunate adventures, provident or improvident contracts, in a debtor’s selling his labor by previous stipulation, can alter a principle.
As to the possession by Mosely of the negroes during some days after adjustment of accounts with Mrs. White, and before her transfer of them in trust, it seems clear, that he held them as property of White’s estate. No one seems to have regarded that possession in any other light, and it is not perceived how he could'have repudiated the right of property in that estate. Now, there being no perceivable fraud on the part of White, if the conveyance to the plaintiff were set aside, it would seem obvious that thentitle in the negroes would be found lodged in White’s estate. We do not perceive how Mosely, or his creditors in his stead, could have recovered from White’s representative, the half of the profits arising from Mosely’s traffic, for that is repugnant to his stipulation, and the negroes represented that *58 sum of profits, though it must be conceded that if the deed to the plaintiff was fraudulent and void, he could not have recovered in this action. Observations have been made, to showfhat it was not; and such being our conclusion, the motion is dismissed.
O’Neall, Wardlaw, Whitner and Glover, JJ., concurred.

Motion dismissed.